Macknet's Executors *v.* Macknet.

---

MACKNET'S EXECUTORS *vs.* MACKNET and others.

1. A legacy of $500 to the testator's wife, to pay for mourning apparel for herself and an infant daughter, (which was part of a provision made for the wife in lieu of dower,) lapsed by reason of the wife's refusal to accept the provision. *Held*, that the executors must retain half of it in trust for the infant, the other half to go into the residue.

2. Testator gave to his wife as part of a provision made for her in lieu of dower, the use of a house and lot or the rents thereof, and also the income of certain bonds and stocks during her life, or until marriage, and after her decease or marriage, to an infant daughter. The wife refused the provision in lieu of dower. *Held*, that no disposition whatever of such interest of the widow in his estate having been made by testator in

the event of her refusal to accept the provision in lieu of dower, the devise and bequest vested in the daughter, in possession, immediately upon testator's death. The income of the securities to be held by the executors for accumulation, and the real estate in trust, subject to any assignment thereof to the widow as part of her dower.

3. If an estate is devised charged with legacies, and the legacies fail, the devisees shall have the benefit of it and take the estate.

4. Whether the failure of an intervening estate in the case of a devise, goes to the benefit of the heir, or of the devisee of the residue, is to be determined by the intention of the testator, whether the intervening estate was regarded as an exception to the general devise of the residue, or as a charge upon the estate.

5. Where a testator has in effect charged upon a particular share of the estate a provision made for his widow in lieu of dower, and it was his intention so to do, and the widow refuses to accept such provision, the pro- vision goes to the benefit of the share of the estate so charged, and will not fall into the residue.

6. A direction that the executors shall pay taxes, insurance, and repairs upon premises devised to the use of testator's widow for life, (being part of a provision in lieu of dower,) and afterwards to a daughter for life, is not concluded by the refusal of the widow to accept the provision made for her, but enures to the benefit of the daughter.

7. Under a devise to one and the children of another, the devisees all take *per capita*, and not *per stirpes*, unless a contrary intention clearly appears from other provisions or expressions of the will.

8. A direction that during the minority of a daughter of the testator, the income of the estate which he bequeathed to her be paid to her mother for the support, maintenance, and education of the daughter, constitutes the mother testamentary guardian, and entitles her to receive the income. Such right is not forfeited by the fact that the mother refused to accept a provision made for her by testator in lieu of dower, and that by being permitted to receive the income she may reap some incidental benefit therefrom.

9. But the income from bonds and securities which formed part of the provision in lieu of dower, and which were charged upon such infant's share of the estate, must not be paid to the mother, but be held by the executors for accumulation for the infant.

10. The principal of the infant daughter's share in testator's estate, must be held by the executors during her minority.

On bill and answer.

*Mr. J. W. Taylor*, for complainants.

*Mr. C. S. Titsworth,* for defendants.

THE CHANCELLOR.

Charles S. Macknet, late of the city of Newark, in this state, by his last will and testament, dated December 4th, 1871, devised, bequeathed, and directed, among other things, as follows :

*First.* I do order all my just debts and funeral expenses to be paid by my executors, hereinafter named, as soon as conveniently can be done after my decease.

*Second.* I give and bequeath unto my beloved wife Mary, the sum of $500, the same to be paid to her by my executors within a reasonable time after my decease, for the benefit of herself and my daughter Hattie, to pay for mourning apparel, &c. I also give to my said wife Mary, the proceeds of a policy of insurance on my life, issued by the Newark Mutual Benefit Life Insurance Company, for $2000, which policy is No. 19,499.

*Third.* I give and bequeath to my executors, hereinafter named, my houses and lots on the north side of East Kinney street, and now designated by the Nos. 38 and 42, to have and to hold the same in trust for the following uses and purposes, to wit: 1st. To permit my said wife Mary to use and occupy the said house and lot No. 38 ; or if she does not wish to occupy the same, then to receive and enjoy the rents of the same, for and during the term of her natural life, or so long as she shall remain my widow, unmarried ; and after her decease or marriage, to permit my daughter Hattie to use and occupy, or enjoy the rents of the same, for and during the term of her natural life ; and at the death of my said daughter Hattie, to convey the said house and lot to her children ; or if it shall be deemed more desirable, by my executors, and for the interest of her said children, then to sell the said house and lot, and divide the proceeds thereof among said children, share and share alike. But if the said Hattie shall die without issue her surviving, then I direct my said executors to sell the said house and lot, and

distribute the proceeds thereof among my heirs, according to the laws of the State of New Jersey respecting intestate estates. 2d. To permit my daughter Caroline to use and occupy the house and lot designated by the No. 42, East Kinney street; or should she not wish to occupy the same, then to have and enjoy the rents of the same, for and during the term of her natural life, and after her death, to convey the same to her children; or if it shall be deemed more desirable, by my executors, and for the interest of said children, then to sell the said house and lot, and divide the proceeds thereof among said children, share and share alike. But should the said Caroline die without issue her surviving, then I direct my said executors to sell and convey the said house and lot, and distribute the proceeds thereof among my heirs, according to the laws of the State of New Jersey respecting intestate estates.

*Fourth.* I direct, and hereby empower my said executors to sell and convey my house and lot now designated as No. 40 East Kinney street, being the middle house of the block of three, owned by me, for the benefit of my estate, and for which purpose I hereby vest them with the fee of the same, the proceeds of which are to constitute a part of the residue of my estate.

*Fifth.* I give and bequeath unto my said executors $4000, in bonds of the United States, bearing interest at the rate of six per cent. per annum, or in such other bonds as I may have at the time of my decease; also, forty shares of the capital stock of the Morris and Essex Railroad Company; also, twenty shares of the capital stock of the National State Bank of Newark; and, also, twenty shares of the capital stock of the Newark National Banking Company, to have and to hold the same in trust for the uses and purposes following, viz.: 1st. To collect the interest, dividends, and income from said bonds and stocks, and from the same to pay all expenses incident to the maintenance of the said house and lot, the use of which I have hereinbefore given to my wife Mary and daughter Hattie, such as taxes, assessments, insur-

ance, and repairs; and, 2d. To pay the balance of said interest, dividends, and income to my said wife Mary, during her natural life; and after her death, to set off the said bonds and stocks to my daughter Hattie, or to her heirs. If the said Hattie shall die without issue, her surviving, or children of such issue, then said bonds and stocks shall revert to my estate, and be distributed among my heirs in the manner provided by the laws of New Jersey respecting intestate estates.

*Sixth.* I give and bequeath unto my said executors $4000, in bonds of the United States, bearing interest at the rate of six per cent. per annum, or in such other bonds as I may have at the time of my decease; also forty shares of the capital stock of the Morris and Essex Railroad Company, also twenty shares of the capital stock of the National State Bank of Newark, and twenty shares of the capital stock of the Newark National Banking Company, to have and to hold the same in trust for the uses and purposes following, viz: 1st. To collect the interest, dividends, and income from said bonds and stocks, and from the same to pay all expenses incident to the maintainance of the said house and lot, the use of which I have hereinbefore given to my daughter Caroline, such as taxes, assessments, insurance, and repairs; and, 2d. To pay the balance of said interest, dividends, and income, to my said daughter Caroline during her natural life, and upon her separate individual receipt; and after her death to set off the said bonds and stocks to her children, or their heirs. If the said Caroline shall die without issue, her surviving, or children of such issue, then said bonds and stocks shall revert to my estate and be distributed among my heirs in the manner provided by the laws of the State of New Jersey respecting intestate estates.

*Seventh.* I give and bequeath to my wife Mary, and my daughter Caroline, household furniture in my possession to the value of $600 each, to be selected by them at an appraised value as follows: my wife shall select one article of furniture and said daughter Caroline one article, and so on alternately

until each shall have selected the full amount of $600, which I give to them respectively, absolutely.

*Eighth.* I give and bequeath to my said wife Mary $500, to be held in trust for the use of her son George Sherwood; the same to be paid to her within six months after my decease, and the interest of which I direct shall be paid by her for the support of her said son George Sherwood during his natural life, and after the death of the said George, the said principal sum of $500 shall be paid to my daughter Hattie, or her heirs.

*Ninth.* All the provisions in this my will made for the benefit of my wife and her said son George, are to be in lieu and satisfaction of her right of dower, and all other interest she may have in my estate; her acceptance of said provisions to be determined by a relinquishment by her to be made in writing, of such dower and interest, within three months after my decease.

*Tenth.* I give and bequeath to my daughter Caroline $300 in cash; also the further sum of $100 in place and in lieu of her piano-forte; also, one-half of the silver and one-half of the silver-plated ware I may have at the time of my decease; the remaining half of said silver and silver-plated ware and also the said piano-forte, formerly Caroline's, I give and bequeath to my daughter Hattie.

*Eleventh.* I give and bequeath unto my son Theodore, the use of my homestead, No. 993 Broad street, in the city of Newark, said use to commence in one year after the first day of April following my decease, my widow to have the privilege to occupy said homestead for one year following the first of April after my decease, if she shall so desire; said homestead comprising sixty-two feet on Broad street, and ninety-two feet on Church street, with all the buildings on said land; said use of said homestead to my said son Theodore to be for the term of his natural life, and subject to the following conditions and reservations, that is to say: that my said son Theodore shall permit his sister Caroline to reside with him and to have the full use and enjoyment, for her sole use, if

she so desires, of the two south rooms on the second floor, free of expense for board or rent, so long as she remains unmarried or is a widow, and reserving the use of the back room to Mrs. Elizabeth Nutman, just as she now uses the same, for and during her natural life. The said premises shall not at any time be liable or made subject to payment of any debts or liabilities of my said son Theodore. And upon the death of my said son Theodore, I do authorize and empower my surviving executor, or whoever may represent my estate, to sell and convey the said homestead premises, and to divide the proceeds of said sale or sales among my children, and the children of my son Theodore, each to have an equal share or part thereof. If, at any time, it shall be deemed expedient by my executors, or the survivor of them, and for the interest of my estate, to sell so much of the said homestead property as fronts on Church street and extending back in depth not more than one hundred and twenty-seven feet, I do authorize and empower them or him so to do; the proceeds of such sale or sales to go to and form a part of my residuary estate.

*Twelfth.* I give and bequeath unto my son Theodore a bond and mortgage for $5000 upon the store and premises formerly No. 305 Broad street, now No. 796 Broad street, in the city of Newark. This bequest is upon the condition that he pay my part of a certain bond and mortgage, dated August 27th, 1852, given by me and Orson Wilson to the Mutual Benefit Life Insurance Company, upon the same premises, and saves my estate harmless and discharged from the payment of any part thereof, and all loss by reason thereof. I also give to him his note which I now hold, dated January 1st, 1856, for $13,050. I also give and bequeath to him twenty shares of the capital stock of the New Jersey Railroad and Transportation Company; twenty shares of the capital stock of the National State Bank, Newark; twenty shares of the capital stock of the Newark Banking Company; twenty shares of the capital stock of the Essex County National Bank, and

twenty shares of the capital stock of the Morris and Essex Railroad Company.

*Eighteenth.* I give and bequeath to my executors the sum of $4000, in bonds of the United States or such other bonds as I may have at my decease, to be by them held in trust during the lifetime of Mrs. Elizabeth Nutman, my late wife's mother, the interest and income of which, during said period, or so much thereof as may be necessary, I direct shall be appropriated to the comfortable support of said Elizabeth Nutman while she lives. My will' is that the said Mrs. Nutman shall remain in and occupy the room in my house that she now does, during her life, if she so desires. After the decease of the said Mrs. Nutman, I direct the said bonds, or upon a sale of them, the proceeds of the same, to be distributed to my three children, Theodore, Caroline, and Hattie, each to have an equal part thereof; and should either of my said children just named have died at that time leaving issue him or her surviving, the share of such decedent shall be distributed to such issue in equal parts.

*Twentieth.* I give and bequeath my pew, No. 94, old number, and now No. 101, in the north isle of the First Presbyterian Church, in the city of Newark, to my daughter Hattie and her heirs and assigns, reserving to her mother the privilege to occupy the same during her lifetime.

*Twenty-third.* All the rest, residue and remainder of my estate, both real and personal, I give, devise, and bequeath as follows: one part thereof to my son Theodore, and to his heirs and assigns; one other part thereof to my daughter Hattie, and to her heirs and assigns; and the other remaining part to my executors, in trust, for the use of my daughter Caroline, during her natural life, the income of said part to be paid to my said daughter Caroline, upon her separate individual receipt; and after her death, the principal of said part is to be distributed among her children, if any shall her survive. If she shall leave no child or children surviving, or issue of such child or children, who shall likewise be entitled, then said part

shall go to my son Theodore and daughter Hattie, their heirs and assigns ; the said Theodore and his heirs to take one part thereof, and said Hattie and her heirs to take the other part. And for the purpose of the distribution of said residue, I do hereby authorize and empower my said executors, or the survivor of them, to sell and convey all or any part of the real estate of which I shall die seized or possessed, except such parts thereof as I have hereinbefore specifically devised, in trust or otherwise, upon such terms and in such manner as they shall think best; and the receipt of said executors, for the purchase money for said lands, shall be a sufficient discharge to the purchaser or purchasers thereof.

*Twenty-fourth.* My will is, and I do direct, that during the minority of my daughter Hattie, the income of the estate which I have hereinbefore bequeathed to her and to her use, shall be paid to her mother, (she remaining my widow, unmarried,) for the support, maintenance, and education of said daughter ; and in case of the death of her said mother, or her marriage, then so much of said income as may be necessary for the liberal support and education of said daughter Hattie, shall be paid by said executors, who, in case of the death or marriage of my said wife Mary, I appoint to be the guardians of said Hattie. I also direct that the income of the stocks and bonds which I have directed to be paid to my wife and daughter Caroline, shall be paid half yearly, as, also, the same directed to be paid for the support and education of my daughter Hattie.

The bill is filed for a construction of the will, and to settle certain questions which have arisen by reason of the refusal of the widow to accept the provision made for her in lieu of her dower, and the parties ask the advice and direction of the court, accordingly, in the following particulars :

1. In respect to the disposal to be made by the complainants, of the bequest of $500, directed by the second section of said will, to be paid to the widow of said testator, for the benefit of said widow and her daughter Hattie, and

whether the whole or any part thereof, and if only a part, what part thereof, falls into the residue of the estate of the testator.

2. In respect to the use, rents, and profits of said premises, No. 38 East Kinney street, prior to the death or remarriage of the said Mary H. Macknet, and whether the same are, during that interval, to be had, received, and enjoyed by the said Hattie, or by the complainants, and if by the complainants, for what purpose, and upon what trusts, and what disposal they are to make thereof, and whether the same will fall into the residue of said estate.

3. In respect to the balance of said interest, dividends, and income mentioned in section five of said will, and when they are to be paid, for what purpose applied, and how disposed of during the natural life of the said Mary H. Macknet.

4. Whether, under the fifth and sixth clauses of said will, the complainants would be required to pay, from the income therein provided, for the expenses incident to the maintenance of such portion or portions of the premises therein referred to as might be assigned to the widow for dower, and while her estate in dower therein continued, that is to say, such expenses as taxes, assessments, insurance, and repairs in said clauses or sections provided for.

5. Whether the bequest of $500, in the eighth section of said will mentioned, is annulled, and goes into the residue of the estate of said testator, by reason of the renunciation, by the said Mary H. Macknet, of the provisions of said will; and if the said bequest does not fall into the residue, to whom the interest thereof is to be paid, prior to the death of said George Sherwood.

6. Whether or not, under the eleventh section of said will, the share of each of said Theodore Macknet's children is equal to the share of each of the said testator's children, in the proceeds of the said homestead premises.

7. Whether, under the twenty-fourth section of said will, the entire income of the estate given to, or for the use of

Hattie, is to be paid to the said Mary H. Macknet, or only such part thereof as may be needed for the support, maintenance, and education of said Hattie, during the life or widowhood of the said Mary H. Macknet; and if the whole of said income is to be paid to the said Mary H. Macknet, during said period, for what or whose use the portion thereof unneeded or unapplied for, for such support, maintenance, and education of said Hattie, is to be held by the said Mary H. Macknet, and what disposal thereof should be made by her; and if the complainants, during that interval or period, are to pay from said income, only such portion thereof as may be needed for such support, maintenance, and education of said Hattie, for what or whose use they are to hold the residue thereof, and how the same is to be disposed of by them.

8. Whether your orators are to hold the principal of Hattie's share in said estate, during her minority.

The testator died January 29th, 1872, leaving a widow, two children, a son and daughter, (Theodore and Caroline, adults, the issue of a former marriage), and a daughter, Hattie, an infant of about seven years old, by his last wife. His estate is estimated at about half a million of dollars.

June 11th, 1872, the widow filed in the surrogate's office of Essex county, her dissent to receive any devise, bequest, or legacy given to her by the will, in satisfaction and bar of her dower, and did thereby refuse to receive the same. The provision made in the will for her, in lieu of her dower, has therefore failed, because of her election not to receive it; or, (to state it differently,) because of her refusal to fulfill the condition precedent, (that she should relinquish her dower within three months after testator's death,) on which it was made.

In passing upon the questions submitted in this cause, it is important to consider the provisions which the testator made for his two daughters.

To Caroline, he gave the use, for her life, with remainder to her children, of the house and lot No. 42 East Kinney street; the benefit of the following securities: $4000 in

United States six per cent. bonds, or in such other bonds as he should have at his decease; forty shares of the stock of The Morris and Essex Railroad Company; twenty shares of the stock of The National State Bank at Newark, and twenty shares of the stock of The National Newark Banking Company; the interest, income, and dividends to be applied, so far as necessary, to keeping up the premises No. 42, East Kinney street, paying taxes, assessments, insurance, repairs, &c., and the rest to her use for life, and the securities, at her death, to go to her children; household furniture to the value of $600; $300 in cash; $100 in place of her piano-forte, given, by the will, to her sister Hattie; half of his silver, and half of his silver plated ware; the right to reside in his son's family, in the homestead, and to have two rooms on the second floor of the house, free of charge, for board or rent, so long as she remains unmarried, or may be a widow; an equal share with Hattie in the proceeds (to be divided between them and Theodore's children) of the sale of the homestead, after Theodore's death; an equal share with Theodore and Hattie in the division of the $4000, set apart for the benefit of Mrs. Nutman, during her life, and the use, for life, of an equal third of the residue of the estate, with remainder to her children.

To Hattie, the will gives, after the death or remarriage of her mother, the use for life, with remainder to her children, of the house and lot No. 38 East Kinney street; the interest, dividends, and income after her mother's death of the following securities: $4000 in six per cent. bonds of the United States, or such other bonds as the testator should have at his decease; forty shares of the stock of The Morris and Essex Railroad Company; twenty shares of the stock of The National State Bank at Newark; twenty shares of the stock of The National Banking Company; the interest, income, and dividends thereof to be applied, so far as necessary, to the keeping up of the premises, No. 38 East Kinney street, paying taxes, assessments, insurance, repairs, &c., and the rest, after her mother's death, to be paid to Hattie for life, and the

securities, at her death, to go to her children ; half of the testator's silver and silver-plated ware ; the piano-forte above alluded to ; an equal share with Caroline in the proceeds of the sale of the homestead, after the death of Theodore ; an equal share with Caroline and Theodore in the securities or the proceeds of the sale thereof, set apart to the benefit of Mrs. Nutman for her life ; the sum of $500, the interest of which is given to George Sherwood for life ; the testator's pew in the First Presbyterian Church, in Newark, reserving to her mother the privilege of occupying it during the latter's life ; an equal share with Caroline and Theodore in the residue of the estate, and an interest in the bequest of $500 to her mother for mourning apparel.

From this statement of the provision made in the will for the two daughters, it will appear that the testator intended to give them equal shares, except that Hattie's share was to be subject to the interest given to her mother therein.

The direct provision made for the widow on condition that she should relinquish her dower in the testator's real estate, is an interest in the bequest of $500 for mourning apparel for herself and Hattie ; a life policy of $2000; the use, while she should remain his widow, of the premises No. 38 East Kinney street; so much of the interest, income, and dividends for her life, of the bonds and stocks last above mentioned, as should not be needed for maintaining those premises; household furniture to the value of $600, and the use for life of the pew.

The testator, it will be perceived, in effect charged upon Hattie's share of his estate all of the provision made for his widow, except her interest in the bequest for mourning apparel, the bequest of the life policy, and the bequest of household furniture. And I think it was his intention to do so.

The widow having elected not to receive the provision made for her in lieu of her dower, and that provision having therefore failed, Hattie is entitled to the benefit of the failure.

These devises and bequests to Hattie were at the death of

the testator, all vested. It seems to me clear, that he intended they should vest in possession, in case of the refusal of his widow to relinquish her dower, for he makes no disposition whatever over of the interest he has given his widow in his estate, in the event of her electing not to receive such provision in the terms of the will.

To hold that these interests fall into the residue of the estate, would be to create an inequality in the provision made for the daughters, which there is no evidence the testator intended, and to give to the son an advantage out of Hattie's share, which, in my opinion, the testator never contemplated. Caroline enters at once into the enjoyment of the provision made for her. It does not appear that it was not the intention of the testator that Hattie should enjoy her share in possession in case of her mother's refusal to relinquish her dower, unless such a conclusion can be drawn from the fact that the gift to Hattie is, as to part of her share, of the estate in remainder.

The circumstances of the parties are of much importance in the consideration of this part of the subject. Here were a mother and her infant daughter. It was not only natural, but eminently desirable that they should reside together. The mother was the proper person to take charge of the daughter, and to that end to have charge of her income. The testator's object and design were obviously, to my mind, to provide for the mother and daughter together, by means of the share of the latter in his estate. They were to reside together, and to a certain extent their interest would be identical. The arrangement would be for their mutual benefit and also for the advantage of his two children by the first marriage, for it enabled him by this method of providing in part for his wife, by assigning to her an interest in her daughter's share of his estate, to make their interests in his estate greater than he could have done, had he made an equal provision for his wife, independent of her daughter's share.

To construe the will so as to defer Hattie's enjoyment of

her interest in the estate until, as to the house and lot, No. 38 East Kinney street, her mother shall have died or remarried, and as to the income, interest, and dividends of the bonds, until the death of her mother, and to give to the residue of the estate the benefit of those provisions in the meantime, for the equal benefit of her sister, her brother, and herself, would, I am satisfied, be contrary to the intention of the testator.  No rule of law or of construction demands it·

It is perfectly settled, that if an estate is devised, charged with legacies, and the legacies fail, no matter how, the devisee shall have the benefit of it and take the estate.  Lord Alvanley, M. R., in *Kennell* v. *Abbott*, 4 *Vesey* 802, 811.  See also, *King* v. *Denison*, 1 *Vesey & Bea.* 260.

And it is laid down as a rule, that whether the failure of an intervening estate in the case of a devise, is to go for the benefit of the heir, or of the devisee of the residue of the estate, is to be determined with reference to the intention of the testator, whether the intervening estate was regarded as an exception to the general devise of the residue, or as a charge upon the estate.  2 *Redfield on Wills*, 503 ; *Cooke* v. *The Stationers Company*, 3 *M. & K.* 262 ; *Sidney* v. *Shelley*, 19 *Ves.* 352.

I am satisfied that it was not the testator's intention to except from the devise and bequest to Hattie, the estate and interest given to her mother.

The devise of the house and lot is to the executors in trust for the benefit of the widow so long as she shall remain unmarried, and then for the benefit of Hattie.  The bequest is to the executors for the benefit of the widow for life, and then for the benefit of Hattie.  The necessity for the trust for the benefit of the widow has not arisen, and never will arise, and I think the case is within the ruling in Sidney v. Shelley, where there was a devise to trustees for ninety-nine years, upon trusts to be expressed, and from and after the expiration or sooner determination of the term, in strict settlement.  It was decreed, upon the apparent intention to devise immediate estates, subject to the term, (not future estates, expectant on

its determination,) that the term, no trust having been declared, should attend the inheritance according to the limitations of the will, and that there was no resulting trust for the heir. Lord Eldon said: "If a term for ninety-nine years being created, the intention appeared clear on the will, that those who were to take after that term should not take in any mode until after the expiration of that term, the court must act upon that intention; but if, upon the whole contents of the will and from the nature of the dispositions, it appears that the testator intended to give estates of inheritance, subject to the term, upon trusts to be satisfied, and if there are none, subject to such enjoyment as this court will give where the trusts are satisfied, there is no rule that prevents this court from saying this was the intention."

"It is clear," says Jarman (*Treatise on Wills, Vol.* 2, *p.* 517,) "that where a term for years is created for particular purposes, and the land subject thereto is devised over, the term, after the purposes of its creation are satisfied, or immediately, if those purposes do not arise, attends the inheritance for the benefit of the devisee." See also 2 *Powell on Devises* 56.

The early cases, in which it was held that an estate in reversion vests immediately upon the determination of the life estate upon which it is limited, by the death of the tenant for life, or by the surrender or forfeiture of his estate, or his disqualification to take it, 1 *Jarman on Wills,* 513; *Sheppard's Touchstone* 435, have been followed in this country in cases such as the present.

In *Yeaton* v. *Roberts,* 8 *Foster* (*N. H.*) 459, it was held that if the person to whom property is given for life decline to accept it, it vests in possession in those to whom it is limited in remainder, and the heirs of the testator have no right to the possession during the life of the first devisee.

In *Adams* v. *Gillespie,* 2 *Jones Eq.* (*N. C.,* 1855,) 244, the testator gave to his wife certain real and personal property, and then to his daughter for life, and then to his daughter's surviving children. The widow dissented from the will, electing to take the provision which the law made

for her.   It was held that her dissent removed her life estate from all the property given to her by the will, and which she did not take independently of it, and that the effect of it was to hasten the enjoyment of the life estate given to the testator's daughter.   See, to the same effect, *Holderby* v. *Walker*, 3 *Jones Eq.* (*N. C.*, 1856,) 46.

As to the question, whether the provision made in the fifth and sixth sections, for maintaining the houses and lots therein mentioned, is affected by the refusal of the widow to relinquish her dower.

Under the opinion I have expressed on the preceding question, that Hattie's interest in the house and lot, the use of which is given to her by the will, vested immediately in possession in her, this question must be answered in the negative, for there is no such change made in the devises of the houses and lots Nos. 38 and 42 East Kinney street, by the refusal of the widow to relinquish her dower, as to affect the construction which otherwise would have been put on the provisions in the fifth and sixth sections, for maintaining those premises.   The fact that dower may be assigned to the widow out of part of the premises, will not affect the right of the beneficial owners under the will to the benefit of the provisions.   They may need it just as much as if no assignment were made.   The tenant in dower has no claim to the benefit of these provisions, or either of them.   The executors, in disbursing money under them, will do so with a view to the interest of the *cestuis que trust,* and to that end will discriminate so far as may be practicable, consistently with the interest of the beneficial owners of the property, in their expenditure, between the portions of the premises assigned to the widow, and the residue.

Another of the questions propounded, is whether, in the division of the proceeds of the sale of the homestead, after the death of Theodore, his children take *per stirpes* or *per capita.*

The direction is, to divide those proceeds "among" the

testator's "children and the children of his son Theodore, ·each to have an equal share or part thereof."

It is a rule, that under a devise or bequest to one, and the ·children of another, *prima facie*, the persons all take *per capita*, and not *per stirpes*. *Hawk. on Wills* 113 ; *Butler* v. *Stratton*, 3 *Bro. C. C.* 367 ; *Fisher* v. *Skillman's Executors*, 3 *C. E. Green* 229, ·231, 232. Nor am I able to find, either in the expressions of the will or in its provisions, any evidence of an intention that the children of Theodore should, in this case, take *per stirpes*.

In two other parts of the will, the sixteenth and eighteenth sections, the testator indicates his intention, that a division among children of a legatee shall be *per stirpes*, and not *per capita*, in apt and explicit language. In the sixteenth section, the language is : " And in case either of said children be dead, at the time of my decease, leaving issue him surviving, then the legacies herein given to such decedent shall go to his issue, to be equally divided between them." In the ·eighteenth, after providing for a distribution of certain lands, ·or the proceeds thereof, to his three children, each to have an equal part thereof, he adds : " And should either of my said ·children just named have died at that time, leaving issue him ·or her surviving, the share of such decedent shall be distributed to such issue, in equal parts."

It is insisted that the widow, by her refusal to accept the provision made for her by the will, has forfeited all right to receive the income which, by the twenty-fourth section, is directed to be paid to her for the support, maintenance and ·education of her daughter.

By that section, she is constituted guardian of ·her daughter. This is apparent from the whole language. The testator directs, that during the minority of Hattie, the income of the estate, which he has thereinbefore bequeathed to her and to her use, be paid to her mother, she remaining his widow, for the support, maintenance and education of Hattie ; and he provides for the support and education of Hattie, by the executors, in case of the death or remarriage

of her mother; and on the happening of either of those events, he appoints the executors guardians of Hattie. No particular form of language is necessary for the appointment of a guardian by testament. The manifestation of the intention of the testator, by the will, is all that is required. An assignment, which confers, expressly or by implication, a power extensive enough to include "custody and tuition," the statutory words, is enough. *Swinburne on Wills, Pt.* 3, § 12. In *Leonard, Pt.* 2, *p.* 221, under a provision by which the profits of land devised to a boy by his father, were given to the boy's mother till his full age, for his maintenance and education, it was said, by Justices Wray and Southcote, that nothing was devised to the mother "but a confidence," and that she was "as guardian or bailiff to keep the infant." In *Bridges* v. *Hales, Mosely* 108, a devise that the son should be under the "care and direction" of two persons designated in the will, was held to constitute them testamentary guardians. In *Mendes* v. *Mendes,* 3 *Atk.* 624, Lord Hardwicke thought that language, by which a testator gave to his wife a certain annual sum for the maintenance and education of his children, whilst they should continue to live with their mother, and at her charge, amounted to a "devise of the guardianship" to the mother. In *Miller* v. *Harris,* 14 *Simons* 540, where the testator directed the trustees of his will to procure a suitable house for the residence of his children, (who were infants,) and to engage a proper person for the purpose of taking the management and care of the house, and of his children during their minorities, and he requested his late wife's sister, if she should be alive at his decease, to take such management and care on herself, it was held that the testator had thus appointed his wife's sister guardian of his children.

It seems clear that the testator, in the case under consideration, intended to appoint his widow guardian of her daughter during the minority of the latter, so long, during the widow's life, as she should remain his widow; and after her death, his executors are to be the guardians.

Although the widow may incidentally reap some advantage from her guardianship, the provision is rather to be regarded as made for the benefit of Hattie than for the benefit of her mother. I see no evidence that the testator intended that his widow, by her refusal to accept the provision he made for her, should forfeit her right to the guardianship. As testamentary guardian, she must give security. *Nix. Dig.* 341.

The income which, under the twenty-fourth section, is to be paid to her, must be limited to the estate which the testator, by the will, expressly and directly gives to Hattie. He contemplated no more. His language is " the estate which *I have hereinbefore* bequeathed to her and her use." It did not include that which he had given to her mother, and which, by reason of her mother's refusal to accept it, has fallen to Hattie. That is not within the language or the purview of the provision. The income of that portion, unless needed for Hattie's support or education, must be collected by the executors and accumulated in trust for Hattie.

As to the bequest to the widow of $500 for mourning apparel for herself and her daughter: I do not see how the conclusion is to be avoided, that this, so far as regards the widow, falls within the provision of the ninth section. The $500 are given to her in trust for herself and her daughter, to answer a certain purpose—the purchase of mourning apparel. If a distinction could be made in favor of the widow's interest in this bequest, it must be on the ground that the legacy may be considered as given to defray what may be considered part of the funeral expenses. But the cost of mourning apparel for the widow is not regarded as part of such expenses. *Johnston* v. *Baker,* 2 *Carr. & P.* 207. In my judgment, one-half of the amount should be assigned to the daughter, who will therefore be entitled to receive, under this bequest, $250 accordingly. The other half falls into the residue of the estate.

By force of the ninth section of the will, neither the widow nor her son George can have the benefit of the bequest of $500 to her, to be held in trust for George, for

his life. For the reasons hereinbefore given, in a like connection, I am of opinion that this legacy vested in possession, immediately, in Hattie.

The result, therefore, is : The widow is not entitled to the benefit of the bequest of $500 for mourning apparel. Hattie is entitled to half of that amount, to be held in trust for her by the executors. The other half falls into the residue of the estate.

Hattie is entitled to the use, rents, and profits of the premises, No. 38 East Kinney street, from the death of the testator, instead of from the death or remarriage of her mother, and the executors will be decreed to hold those premises in trust accordingly, subject, of course, to any assignment which may be made of the premises, or any part thereof, to the widow, as part of her dower. Hattie is now entitled to the bonds and stocks mentioned in the fifth section of the will, and the executors will be decreed to hold the same for her, on the trust declared in reference thereto, in that section of the will, and to pay out of the interest, income, and dividends thereof, the expenses mentioned in that section, of maintaining the premises No. 38 East Kinney street, if, and so far as it may be for her interest so to do, with reference to the assignment of the premises, or part thereof, in dower to the widow, and to hold and accumulate the balance in trust for her.

The executors will be directed to pay the expenses of maintaining the premises No. 42 East Kinney street, out of the interest, income, and dividends of the stocks and bonds, in the sixth section of the will mentioned, if, and so far as it will be for the interest of Caroline so to do, with reference to the assignment of the premises, or part thereof, to the widow in dower.

Hattie is entitled to the $500, in the eighth section of the will mentioned, and the executors will be decreed to hold and accumulate the same in trust for her accordingly.

Each of the children of Theodore Macknet will be entitled

to an equal share with testator's daughters Caroline and Hattie, in the proceeds of the sale of the homestead, to be made at the death of Theodore.

The widow is, under the twenty-fourth section, entitled to receive the income of the share of Hattie, except so much of that share as has fallen to the latter through her mother's refusal to accept the provision made by the will for her. .The income of the excepted portion of Hattie's share, will be held and accumulated by the executors in trust for her accordingly.

The parties to this suit will be at liberty to apply to this court from time to time as occasion may require, for further directions.